# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JESSICA KELLY,

    *Plaintiff,*

vs.

Case No. 17-1002-EFM

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Jessica Kelly seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("the Act"). Kelly alleges that the administrative law judge ("ALJ") erred in assessing her residual functioning capacity ("RFC") and in failing to properly assess her credibility. Finding that the ALJ failed to adequately explain her reasons for not adopting a limitation contained in a medical expert's opinion, the Court reverses the decision of the Commissioner and remands for further consideration.

### I.    Factual and Procedural Background

Kelly was 21 years old on her alleged disability onset date, September 17, 2008. She has a high school education with some college. She previously worked as a receptionist, chiropractic

assistant, and media specialist, but has not engaged in substantial gainful activity since her alleged onset date. In October of 2012, she applied for disability insurance benefits and supplemental security income.

Kelly's relevant medical history dates to 2008 when, while pregnant with her daughter, she underwent a procedure to remove a kidney stone and insert a ureteral stent. Shortly after she gave birth, doctors removed the stent and performed a cystoscopy. Following these procedures, Kelly developed interstitial cystitis[1] and pelvic floor dysfunction.[2] Over the next seven years, she would undergo treatment from a variety of sources for interstitial cystitis, pelvic floor dysfunction, fibromyalgia, chronic pain syndrome, chronic low back pain, migraines, irritable bowel syndrome, depressive disorder, anxiety disorder, bipolar disorder, and substance use disorder, among others.

Kelly attended three hearings before ALJ Christine Cooke in 2014 and 2015. At the last of these hearings, Dr. Chukwuemeka Ezike testified as a medical expert and gave his opinion of Kelly's RFC. He concluded that she was capable of lifting 20 pounds occasionally and ten pounds frequently, sit for six hours in an eight-hour day, stand and walk for six hours in an eight-hour day, and occasionally climb stairs and ramps. He further stated that she could occasionally stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds, and that she should avoid hazards (heights, moving machinery, and extreme cold). Finally, he stated that she would possibly need unscheduled breaks.

---

[1] Interstitial cystitis is a condition involving bladder inflammation, causing bladder, pelvic, and abdominal pain, as well as a frequent and urgent need to urinate. It can cause incontinence.

[2] Pelvic floor dysfunction is a disorder involving lack of coordination of the pelvic floor muscles, resulting in constipation and pain.

-3-

With one exception, the ALJ adopted Dr. Ezike's conclusions almost verbatim when she assessed Kelly's RFC. The ALJ did not include Dr. Ezike's limitation that Kelly would need to be allowed to take unscheduled breaks due to her interstitial cystitis. The ALJ also included mental limitations; limited Kelly to an indoor work environment, free from exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dust, or airborne particulate; and specified that Kelly needed reasonable access to a restroom facility.[3]

After concluding that Kelly could not perform her past relevant work, the ALJ found that Kelly could perform other jobs that existed in the national economy, and was therefore not disabled. Kelly appealed that determination to the Appeals Council. The Appeals Council denied review, rendering the ALJ's decision the final decision of the Commissioner. Kelly timely filed her complaint challenging that decision in this Court.

## II.   Legal Standard

Judicial review of the Commissioner's decision is guided by the Act, which provides that the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.[4] The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[5] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the

---

[3] The ALJ defined "reasonable access" as "never having job duties that require a replacement worker on site before claimant is able to depart from her duty station."

[4] 42 U.S.C. § 405(g).

[5] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

conclusion."[6] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[7]

An individual is under a disability only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[8] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[9]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[10] The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[11]

The first three steps of the sequential evaluation require the ALJ to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether

---

[6] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[7] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[8] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[9] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2005)).

[10] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).

[11] *Barkley*, 2010 WL 3001753, at *2.

the severity of those severe impairments meets or equals a designated list of impairments.[12] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[13]

Upon assessing the claimant's RFC, the ALJ moves on to steps four and five, which require the ALJ to determine whether the claimant can perform her past relevant work, and if not, then whether she can generally perform other work that exists in the national economy.[14] The claimant bears the burden in steps one through four to prove a disability that prevents performance of her past relevant work.[15] The burden then shifts to the Commissioner at step five to show that, despite her alleged impairments, the claimant can perform other work in the national economy.[16]

### III.   Analysis

Kelly challenges the Commissioner's decision on two fronts. First, she argues that the ALJ improperly assessed her RFC by affording "great weight" to the medical opinion of Dr. Ezike, but then failing to explain why she did not incorporate Dr. Ezike's limitation of unscheduled breaks into her assessment of Kelly's RFC. Second, Kelly argues that the ALJ failed to conduct the proper credibility analysis of Kelly's statements about the limiting effects of her disorders. Because the Court agrees with Kelly's first argument, the Court reverses and

---

[12] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[13] *Barkley*, 2010 WL 3001753, at *2; *see also* C.F.R. §§ 404.1520(e), 404.1545.

[14] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[15] *Lax*, 489 F. 3d at 1084.

[16] *Id.*

remands the case without deciding the second issue, although Kelly raises serious concerns about the ALJ's handling of her credibility, which the ALJ should address on remand.

**A.     RFC Assessment**

Kelly's first argument is that the ALJ, in assessing her RFC, failed to account for the unscheduled breaks that Dr. Ezike determined Kelly may need to take during the work day. Kelly argues that the ALJ should have included the need for breaks in her RFC determination because she afforded Dr. Ezike's opinion great weight and did not explicitly discount that specific limitation. Kelly argues that, had the ALJ included the need for breaks in Kelly's RFC, the vocational expert ("VE") would have testified that Kelly could not work any job existing in the national economy. Indeed, the ALJ asked the VE at the final hearing whether any jobs existed for an individual with the RFC assessed by the ALJ, plus the need to take up to five additional ten-minute breaks, and the VE said that no such jobs exist.

The Commissioner counters that the ALJ was not obligated to adopt Dr. Ezike's opinion in its entirety because she accorded it "great weight," not "controlling weight." And even if the ALJ was required to adopt Dr. Ezike's limitation of extra breaks, the ALJ did so by specifying that Kelly would need reasonable access to a restroom facility. According to the Commissioner, Dr. Ezike's opinion regarding unscheduled breaks stemmed from Kelly's interstitial cystitis causing her to frequently and urgently need to urinate. The ALJ's "reasonable access to a restroom" limitation addresses this symptom of interstitial cystitis as adequately as Dr. Ezike's "unscheduled breaks" limitation does. Therefore, according to the Commissioner, the ALJ's RFC determination was not deficient.

When assessing a claimant's RFC, the ALJ is required to consider and address all of the medical opinions.[17] When the ALJ's RFC assessment conflicts with a medical opinion, the ALJ is obligated to explain why she did not adopt the medical opinion.[18] That is especially true when, as here, the ALJ accorded a medical opinion great weight, but then did not adopt one of that opinion's limitations. Contrary to the Commissioner's claims, this is not a case where the ALJ's RFC assessment simply contained a limitation that was not included in any of the medical opinions.[19] Rather, this is a case where the ALJ ignored—without explanation—a crucial limitation from a medical opinion she claimed to accord great weight.

While it is clear that "[t]he ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability,"[20] the Commissioner claims that the ALJ did not do so in this case. The Commissioner argues that the ALJ accounted for Dr. Ezike's opinion that Kelly would need to take unscheduled breaks by concluding that she would need to work indoors and have "reasonable access to a restroom facility." However, the ALJ did not make it clear in her decision that she was doing that. In fact, the two hypotheticals she proposed to the VE suggest the opposite. In her first hypothetical, the ALJ described an individual with the physical

---

[17] *Ferguson v. Colvin*, 2016 WL 4733864, at *3 (D. Kan. 2016) (quoting Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. 1996)).

[18] *Id.*

[19] The Commissioner cites *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) for the proposition that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Although that is a correct statement of the law, it is irrelevant here because the ALJ was not just adding in an unsupported limitation to the RFC, but was picking and choosing from a medical opinion without explaining why she discounted a limitation from an opinion she otherwise accepted.

[20] *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004) (citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984)).

limitations that the ALJ eventually adopted in her RFC assessment, including the requirement that the individual have reasonable access to a restroom. In her second hypothetical, the ALJ described an individual with all of the same limitations as hypothetical one, with the additional requirement of up to five unscheduled breaks, each lasting at least ten minutes.[21] If the ALJ meant to account for Dr. Ezike's unscheduled breaks limitation by requiring reasonable restroom access, she probably would not have offered those two hypotheticals to the VE. But the Court need not resolve this ambiguity; it is instead for the ALJ to clear up on remand.

The Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."[22] When the ALJ does not adequately explain her reasons for not adopting a limitation in a medical opinion, the Court cannot meaningfully review her decision.[23] Because the ALJ's failure to adequately explain her conclusions put the decision beyond the reach of meaningful review, the Court reverses and remands. Upon remand, the ALJ should clarify what differences, if any, exist between her RFC assessment and Dr. Ezike's opinion and explain why she diverged from Dr. Ezike's opinion. She may need to ask Dr. Ezike to explain what he meant by "unscheduled breaks," and whether "reasonable access to a restroom facility" would account for that limitation.

## B.     Credibility Findings

Kelly's second claim is that the ALJ erred in assessing Kelly's subjective complaints about her symptoms. She alleges that the ALJ attempted to explain her decision on this point

---

[21] The VE testified that the individual in hypothetical one would be able to find work, but the individual in hypothetical two would not.

[22] *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).

[23] *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001).

with unsupported and conclusory statements. According to Kelly, the ALJ failed to follow the proper procedure for assessing credibility, expressed in *Musgrave v. Sullivan*.[24] She also claims that the ALJ improperly relied on Kelly's financial stake in the outcome of the case as a reason to discount her statements about the symptoms of her impairments.

Because the Court is already reversing and remanding this case on the basis of Kelly's first claim, it is unnecessary to decide this issue at this time. However, Kelly raises serious questions about the method employed by the ALJ to assess her credibility. On remand, the ALJ should address this issue and explain her conclusions about Kelly's credibility with more detail, following the procedures laid out by the regulations and Tenth Circuit case law.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is hereby **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED**.

Dated this 22nd day of December, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[24] 966 F.2d 1371, 1375-76 (10th Cir. 1992) ("We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.") (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).